with American Car Rental Association v. Humphreys, number 251246, Mr. Schluter. Thank you, Your Honor. And good morning. May it please the court. My name is Dan Schluter on behalf of the appellant American Car Rental Association. The issue in this case is whether Colorado's new congestion impact fee, which is imposed solely on rental transactions at a rate of $3 a day, is preempted at airport locations by a federal statute 49 U.S.C. 4116, sometimes called the Anti-Head Tax Act. The district court concluded that the fee was not preempted, but it did so based on a mistaken reading of the relevant statute. The proper interpretation of that statute is, of course, a de novo question reviewed by this court, de novo, it's a question of law. Our argument is that the district court reading of the statute is inconsistent with the text of the statute, it's inconsistent with the purpose of the statute, and it creates a superfluity in the statute with an earlier amendment, which was enacted in 1994. But before sort of addressing those arguments, I think it would be helpful if I address up front the two, what we see is the two sort of concerns that motivated the district court's ruling, and it is set out in its opinion. The district court was number one concerned that our interpretation would create favoritism for the airport, it would create an effective subsidy, that's the term that district court used for airport businesses, it would put them in a special exempt position, that's another term that the district court used, and the reason it believed that is that it would exempt them from taxes that are applicable off the airport. After all, this rental fee is applicable both at airport locations and off-airport locations, and the district court thought, well, we're only asking for it to be preempted at the airport locations, you're going to get a special exempt position. Respectfully, that reflects a misunderstanding and really an incomplete picture of what this statute 41-16, the anti-head tax, is all about. The problem that Congress was concerned with was that there were airport dollars out there, and they were being siphoned off by state and local governments to be used for local projects, projects that benefit the state as a whole, and there's a long history of this, of imposing taxes specifically on rental cars to raise taxes to fund local sports stadiums, convention centers, lots of things like that, and the problem that Congress had before it was that problem. Airports used as a piggy bank to fund projects that benefit the state as a whole. So the statute here, and this is the important point, directly goes to the court's concern about favoritism. The statute doesn't say that states can't have taxes aimed exclusively at the airport. It doesn't say that you can't have taxes aimed exclusively at particular types of businesses. It imposes a use restriction, though, for those types of taxes. If you have, if you want to have a tax exclusive to the airport, which had been prohibited since 1994, you can have one, but it has to be utilized for airport purposes, the revenues do. Counsel, could you just clarify one point, though? It seems like the language you're drawing on right now is from subsection 4 when you say exclusively, but aren't we dealing with subsection 5? We are. We are, but these two subsections, although they're enacted 20 years apart, they're designed for the same purpose, and they have the same language about utilized for airport or aeronautical purposes. So section 4 prohibits taxes exclusive to the airport unless utilized for airport purposes. And then subsection 5 was enacted 24 years later by Congress in response to a very particular problem that happened as a result of subsection 4. Subsection 4 is limited in scope. It's limited to taxes that are exclusive to the airport. Well, state and local governments, they're smart people, they recognize that there's still a way to target airports. You don't have to single out exclusively the businesses there. All you have to do is target the types of commerce that happen at airports, lots of things like that. But rental cars are really the predominant example. If you impose a tax statewide, so not exclusive to the airport, on rental cars, that's going to hit some, it's going to hit transactions off the airport, but it's also going to hit transactions on the airport. And because 50 percent, 50 percent of rental car transactions happen to the airport, you're necessarily going to have a disproportionate effect if you target the tax in that way. And subsection 5, like subsection 4, doesn't prohibit those sorts of taxes. You can still have those taxes, but there is a safeguard put in there by Congress. And that safeguard is, it's got to be utilized for airport and aeronautical purposes. And so the concern that the district court had is that we're seeking some sort of special tax exemption or favorable treatment vis-a-vis locations off the airport, that's not the case here. What, there is, there is a restriction that is applicable solely at the airport, and that restriction is that these sort of taxes have to be utilized solely for airport purposes. And it's true that that restriction doesn't apply off the airport. So there is a distinction between the airport and off-airport businesses, but that distinction goes to the very heart of why Congress was enacting 4116, which is to prevent states and local governments from targeting the airport with special taxes and using that revenue to fund sports stadiums. Did the district court consider this argument in relation to the concern that you're addressing? I think the district court was aware of it, but the district court, particularly because the district court in its interpretation of the statute said, look, you're creating favoritism toward the airport. I think that the district court didn't put sufficient emphasis that this is not an exemption that we're seeking. This is a condition on the way in which these funds can be used. What was the second concern? The second concern was that the statute would sweep too wide under our interpretation, and it is true that looking at the legislative history of the statute, which is completely clear, that the problem that Congress was legislating for were special industry taxes aimed at particular rental cars, and that the problem with these is that there were over a hundred enacted between 1990 and 2010, and there were a spate of these rental car taxes, and they were being used to fund projects that had nothing to do with the airport. Instead, they were being funded or being used to fund general projects that benefit the state as a whole, and so the district court's concern is, well, our reading of the statute, and it's true, it applies beyond just rental cars. Congress didn't just say rental cars taxes are prohibited at the airport. It says in subsection 5 that the taxes and fees that are prohibited are taxes on sales and service. Let me back up. The prohibition applies to taxes and fees unless they are generally imposed on sales and services. That is like a generally imposed sales tax, unless the tax is utilized solely for airport purposes. Okay, just to maybe restate this, so your argument is the district court was concerned about the statute sweeping broadly, but properly interpreted, it does sweep broadly. That's exactly right, Your Honor, and it will. The district court gave a very useful example, the plastic bottle tax, and it's true that because that is not a tax that's imposed, generally imposed on sales and services, it would be within this statute scope, but it would still, the state can still enact that sort of tax and apply it at the airport as long as the proceeds are still utilized at the airport. Can I just ask you your position on one thing the district court said, that subsection 5, and I'm quoting, is potentially susceptible to two different interpretations. Do you agree with that? We don't, Your Honor. We think our interpretation flows inevitably from the text of the statute. Plainly, unambiguously, all of that. Thank you. All of that. So that's it. That's just the, that's what it means, and it can't mean anything else. It can't be. Generally imposed on sales and services, and the district court's ruling, and our brief covers this in detail, the district court's ruling essentially ignores those words sales and services. Maybe you could actually start with the language. I can't. Can you tell me just your case for the reading that particular language? So generally imposed on sales and services. Sales and services are general terms. The statute tells us explicitly what the tax has to be generally imposed on. It's not generally imposed in a vacuum. It's that, which is how I think the district court read this, is that it's just a generally imposed restriction, and that could be a geographic restriction, or that could be a subject matter restriction. And the court said, in its opinion, it could probably be read either way. But what that ruling disregards is that the statute tells us explicitly what the tax has to be generally imposed on for it to escape the statute's coverage. It's got to be generally imposed on sales and services. Those terms are very broad, and they are general terms. They are not limited geographically or to particular types of services, and that was the whole intent here, right? What Congress was concerned with was state and local governments enacting taxes targeted to specific types of commerce, which happened disproportionately at the airport. That was the workaround that state and local governments came up with in response to the 1994 statute. Again, I'm gonna ask you to go back to the statute. Sure. So what meaning are you giving to sales and services? For example, a generally imposed sales tax, that is the quintessential example of a tax that is generally imposed on sales and services. A generally imposed sales tax doesn't even come within the statute, and the reason it doesn't is because Congress didn't want to earmark those funds for the airport. So a generally imposed sales tax on food and beverage or newspapers that you buy at Denver International, those are subject to sales tax. State gets that sales tax. It's not subject to any restriction whatsoever, and so that is the very specific type of tax that is carved out from the statute's coverage under that generally imposed on sales and services. And how do they understand why this is not? Because this tax is imposed on a very specific, particular service. It is imposed on rental car transactions only. It is the very opposite of a tax that is generally imposed on sales and services, and it is exactly the type of tax that Congress said in the legislative history. The sponsor statement is very clear on this. This is the type of tax that's creating the problem because it's a tax that we're not taxing. There's a reason that this tax doesn't apply to flower shops, barbershops. This tax, this fee, is imposed solely on rental car transactions, and the reason it's imposed on rental car transactions is because 50% of those transactions take place at the airport. It is an effective way to export the tax burden to outsiders, to air travelers, and to the businesses that serve them. Well, if the state wanted to stick with the $3 fee, and you're saying, well, it has to apply to everything, do they have to put a $3 fee on everything to comply with the statute? There are two ways to comply with the statute. You can have a generally imposed tax on sales and services, or you can have a fee or a tax that is specific to the airport, could be even exclusive to the airport, but it has to be exclusively used at the airport. And the reason for that requirement, again, is because Congress was concerned with taxes being directed at the airport and then used to fund things that have nothing to do with the airport. Well, I'm going to come back to an issue we raised for supplemental briefing. If the fee is imposed on consumers rather than businesses, how does the statute even apply? Well, it does apply, because the statutory requirement is that it be levied or collected on businesses. And it clearly is, because the state is... No, I didn't ask that. I said, assuming it's levied and collected from consumers, does the statute apply? If it were not levied and collected on the business? Right. No, it would not. Okay, and why isn't this fee paid by the consumers? It's collected... If I go out the airport and rent a car, I'm gonna have that fee on my on my bill. I have to pay it, right? Just like a sales tax. Just like a sales tax, that's right, Your Honor. And it can be both, is the answer. It can be collected, the business collects it from the consumer, and the state collects it from the business. And this statute is directed, the prohibition is directed to what a state can do. It says no state can levy or collect taxes that are in the scope of the statute. Well, that's why I'm asking you, if it's levied on the consumer, then that isn't levied on a business. It is not, the state is not levying it on the consumer. The state is collecting... Well, again, I didn't say that. I said, if it is levied on a consumer, doesn't the statute by its very terms not apply? No, Your Honor, because it's levied or collected. And so if it's collected from a business, it applies. I just don't see how that, how's that any different from sales tax? It absolutely isn't different from sales tax. And that's why the carve-out in this statute, the carve-out for generally imposed sales and services taxes, if this statute didn't apply to sales taxes, there would have been no reason to put that carve-out in Well, you argue that the tax is on the transaction. I'm not even sure what that means. But if the transaction, if it's levied on the transaction, it's not levied on the business either. The tax, under the specific language of the statute, the fee is imposed on the transaction. The obligation to collect it is placed on the business. The state collects it from the business. And as a result, we come within the statute. This, the whole purpose of this statute was directed at transactional taxes, like the sales tax, like specific taxes. This provision wouldn't make any sense if it weren't applicable to those sorts of statutes. I'm sorry, I apologize, Your Honor. I didn't realize that I was over time. I put you in the position to go over, but I appreciate your answer and we'll hear from the other side. Thank you. Appreciate your argument. Thank you. Mr. Nelson. Good morning and may it please the Court. My name is Pavan Nelson on behalf of the state officials. Colorado's congestion impact fee applies to everyone using a short-term rental vehicle on Colorado's roads. It is not a charge solely on out-of-state tourists, but rather it impacts Colorado residents to the same extent as tourists come into the state. In-state resident, out-of-state resident, it doesn't matter. If you're driving a short-term rental vehicle on Colorado's roads, you pay the fee and you pay your share towards maintaining the surface transportation infrastructure. The fee here does not discriminate against interstate commerce in any way and it is not preempted by subsection 5 because, one, it is not levied or collected upon any business, two, the fee is generally opposed, and three, to the extent there is any doubt in the court's mind, the court should adopt the district court and the state officials interpretation because it's the interpretation that disfavors preemption. For all those... Back to your first point, and it really picks up on the last topic we were just discussing with Mr. Schluter. Given that the car rental companies must collect the fee, why doesn't that cause the fee to come under the language of the statute that uses the words levy or collect the tax fee or charge? For two reasons, Your Honor. I think first, looking at the text of subsection 5 itself, again, it's prohibiting levying or collecting upon the business itself. It's on the business, not from someone else and just collecting, remitting it to the state. And I think, Your Honor, you are correct in analogizing it to the sales tax, which uses the same process where the consumers pay the tax, the vendors hold it in trust and simply remit it. Well, your opposing counsel seems to think that helps his position. It doesn't, Your Honor, because I think the courts are pretty clear that the sales tax situation, the legal incidents that the tax itself falls on consumers itself and not on the business, not on the vendors. And so because the text of the statute places it, prohibits only the levy or collection upon the business itself, it doesn't prohibit it from being collected by, imposed on consumers or other third parties. Now just note that it seems that ACRA seems to agree with that concept. You know, I noted in our supplemental brief that in their reply brief, they tried to analogize or distinguish away electric vehicle fees because they weren't imposed upon any business, they were imposed on someone else. And that's the reading where we're saying the court should adopt here. The second point on that point, Your Honor, is I think it's useful to look at other cases that have interpreted the similar language in the Subsection 4 context. I'm talking about the Susquehanna case, the Burbank case, and even the Avis case out in New Jersey. And in all those cases, they were interpreting the upon any business language and a part of their logic, a part of the reasoning in those cases was the fee or the tax at issue in those cases were on the parking patrons, they were on the consumers, they were not on the business themselves. And so because of that, it wasn't preempted by Subsection 4. And Congress legislated Subsection 5 against that backdrop, using the same language that other courts have interpreted in that same way. So I think for those two reasons, Your Honor, I think because the plain text of the statute says it's on the business itself, and how, you know, other courts have interpreted similar language, it leads to the conclusion that simply collecting the fee that is paid by someone else and remitting it to the state doesn't mean that that's collected upon the business itself. What if the car rental company, airport or otherwise, doesn't charge it to their renters? Who has to pay at that point? Well, that would be a violation of the statute because... Oh, I know, but then if you want to enforce it, do you go after the car rental company? Do you go after the renters? How does that work? Yes, just like the sales tax, they would be the vendor. They would be the car rental companies that would be liable. So why wouldn't then that be satisfied upon the business? Because it's not, the tax itself wasn't placed upon the business to begin with. What they're being sort of, in your hypothetical, what they'd be going after, what the state would be getting, is the failure of the rental car companies to collect the fee from the consumers themselves, hold it in trust, and remit it. So again, when we're looking at this upon any business language, we need to look at where the legal incidents, where the fee actually falls, and I think that's the guiding question that should, and when you actually look at that, it comes out in the state's favor. It comes out in the district court's favor. So unless the court has any other questions on the upon any business language, well, I will back up. I just want to emphasize, too, that the fee here is explicitly a user fee. It's imposed on the users, and the users here are the consumers who are renting the vehicles and using Colorado's roads. And, you know, when a fee has to be imposed on a consumer, separately stated on their invoice, all the case law, along legal incidents, indicates that that indicates that the fee is on the consumer itself. So two points on this, and I'll move on to the generally imposed issue. The first point is the fee is imposed on the consumer, and second point is it's not preempted because Subsection 5 does not preempt fees that are imposed on consumers. So unless the court has any other questions on that issue, I'd like to move over to the generally imposed issue. So even if the fee is upon the business, Akra's claim would still fail because the fee is generally imposed on rental car services in Colorado. And starting with the text, I think the District Court said it correctly, you need to look at the specific provision and also within the full context of the statute itself. And in that case, generally imposed must be interpreted harmoniously with the term fee and the other provisions of the Anti-Head Tax Act. And a fee is something specific, placed on a specific class for a specific purpose. They're targeted by definition. And generally imposed means something that's placed or required in a broad, applies to every member of a class or kind of a group. So when you put those together, I think the best reading of the Subsection 5 is that a fee is generally imposed by a state if it applies to every member subject to the fee throughout the jurisdiction. Basically, it's a reading that puts similar businesses on similar footing. So you're not adopting the geographic interpretation of the District Court? Well, yeah, broadly throughout the jurisdiction, broadly throughout the taxing jurisdiction. So I think, so yes, it applies to every member of the class throughout the jurisdiction. And there's lots of hypotheticals flowing around, but I just like to focus on the facts of this case, right? This fee is imposed on all consumers. It applies to me, thee, and the guy behind the tree. It applies to tourists coming to the state and renting a car at the airport. It applies to a Coloradan renting a car while their car is in the shop. It applies to someone using a U-Haul to move from Denver to Grand Junction. It applies to everyone. And the undisputed facts in this case is that it falls equally on airports and non-airports, and that if you actually look at the numbers itself, more of the revenue comes from off-airport locations. So this is a fee that applies generally throughout the jurisdiction. The burden is shared generally across everyone. And so I think when you look at the text of the statute, it leads to the conclusion that the best reading of Subsection 5 is one that puts businesses on equal footing. And that's the one the District Court adopted, and that's the one that we adopted. Is it the best reading, or is it the only reading? I would say it's the only reading, Your Honor, but to the extent there is any doubt in the Court's mind, it should adopt our reading, because it is the reading that disfavors preemption. What if we think that both readings are reasonable? That no one has the best reading, but they have reasonable readings. What happens to the preemption question then? Well, we would win. The state officials would still win, Your Honor, and let me explain why. It's because when a statute is susceptible to more than one plausible reading, courts should adopt the reading that disfavors preemption, especially in fields occupied by the states, traditionally occupied by the states. And the fields we're talking about here are regulation of roads, regulation of intrastate economic activity, and revenue generation. And ACRA's interpretation of the statute would prevent, would seriously hamper the states from doing all those activities. It would prevent targeted taxes in any way from implementing the airport. And so again, it would enter the field traditionally occupied by the states. So if the Court thinks both are good, it should still adopt the one, our reading, because it disfavors preemption of the states. Thank you. Then just following up on that, why wouldn't you say this is an area that is traditionally being governed by Congress? They've legislated upon it so many times. So, I mean, in other words, it's not one of those cases where Congress is silent, which we've had those cases before. That didn't, that had, that's not this case. Congress is legislated and legislated, so why wouldn't we say this is an area where they traditionally have regulated, because it's interstate commerce. I mean, the title of it is interstate commerce. Because, Your Honor, I think when you actually look at how the Anti-Head Tax Act developed, Congress went in an incremental way addressing specific problems in a, in a targeted way. It started off with no head taxes, you know, no taxes on, on airlines. Then it moved to no discriminatory taxes on, on airline property. Then it did subsection 4, and then it did subsection 5. And I think the interpretation ACRA is, is, is proposing here would turn section 5 into a sledgehammer that would destroy all of the incremental progress Congress took in the Anti-Head Tax Act. Because under their interpretation, it would prohibit all but general sales taxes. It prevents states from imposing anything except general sales taxes. As we all know, states commonly put targeted taxes and fees on particular things for particular purposes. And so, doesn't your, I mean, doesn't your argument actually suggest that Congress is attempting to preempt state law because all of these amendments and additional provisions arise out of states' ways, states' clever ways to get around what they thought was a broad-reaching statute? Yes, I would agree Congress was attempting something, Your Honor. But I think, I think Congress, what Congress was attempting here was, and it's, it, the District Court talked about, a lot about this. We talked about it in our briefs. It was, it was attempting to address a particular loophole from subsection 4, which was, you know, the gerrymander districts. And I think Congress accomplished that with our reading, which makes sure that any fees or taxes just has to apply broadly through the jurisdiction. And so, yes, Congress was attempting to do something, but it wasn't totally preempting states from being able to impose targeted taxes throughout a jurisdiction. Have you found any case law interpreting subsection 5, for that matter, subsection 4, that shed any light on these issues? So, unfortunately, there's, this is a case of first impression, I think, for subsection 5. There have been cases that interpreted subsection 4, and I know, I noted them. It was the Susquehanna case, it's the Burbank case, it's the Alamo, oh no, Avis from New Jersey. Those were all interpreting subsection 4, and I think their logic, their reasoning, it touches upon the upon any business issue. But because subsection 4 doesn't have the generally imposed, they don't really say anything about that. I'll walk that back. The Avis case does. They were talking about the legislative history that ACRA has raised from 2011, and again, my general point about that would be it's illegitimate because it's a single-floor statement from a legislator from 2011, seven years before this act was adopted, so it doesn't really shed any light into the meaning of subsection 5. But I guess you're not willing to say the statute is plain, so we shouldn't look at legislative history? Or you are, you think your interpretation is plain, so we shouldn't look at that legislative history? I think our interpretation is based on the text and structure of the statute, but additionally, Your Honor, I think looking to legislative history from seven years before the act was actually passed isn't really legislative history. It's a single-floor statement from a legislator years before this act was even passed, which is not an appropriate tool to use to determine statutory meaning. So unless the court has any other questions, I would just end by asking the court to affirm the district court, and yes, thank you very much. Thank you, counsel. I think we've exhausted the appellant's time, is that correct? So we will take this case as submitted. Appreciate the arguments.